BANK OF EDENTON et al. v.
UNITED STATES.
No. 5387.

Circuit Court of Appeals, Fourth Circuit.
Nov. 5, 1945.

J. C. B. Ehringhaus, of Raleigh, N C., and W. D. Pruden, of Edenton, N. C, (P. W. McMullan, of Elizabeth, N. C., on the brief), for appellants.

John C. Harrington, Attorney, Department of Justice, of Washington, D. C., and R. Brookes Peters, Jr., Sp. Asst. to U. S. Atty., of Wilmington, N. C. (J. Edward Williams, Acting Head, Lands Division, Department of Justice, of Washington, D. C., J. O. Carr, U. S. Attorney, of Wilmington, N. C., and Roger P. Marquis, Attorney, Department of Justice, of Washington, D. C., on the brief), for appellee.

Before SOPER, DOBIE and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

The Bank of Edenton and others, as executors of Julien Wood, deceased, brought this appeal from the judgment of the District Court of the United States for the Eastern District of North Carolina in condemnation proceedings brought under the Second War Powers Act of March 27, 1942, 56 Stat. 177, c. 199, § 201, 50 U.S.C. A. Appendix, § 632. The land in question was one of 45 tracts taken by the Government for the construction of a Marine Corps Glider Base in Chowan County, North Carolina. It was the largest single tract of those taken, including 1276.97 of the 2918.62 acres in the whole area, and, though farmed as a single unit for at least twenty-four years, it had originally been divided into two separate plantations.

Prior to the commencement of any condemnation proceedings, because of the urgency of the war emergency, the United States on August 10, 1942, obtained an irrevocable license from the owners granting the right of use, possession and occupation of the property for the purposes of survey and construction. This license further provided:

"The license shall in no sense be considered a conveyance of this property. The fee simple title to the same shall remain in the undersigned owner.

"It is expressly agreed that the said land shall be valued as of this date and all improvements placed on the premises after the date hereof, shall be and remain the property of the United States, and shall never be included in the value of said tract to be paid by the Government.

"This license shall be irrevocable by the grantors, and it is understood that if the United States of America shall see fit to purchase or otherwise acquire the title to said property, then all claims for damages due to use and occupation shall be waived."

Acting under this license, representatives of the Government entered and commenced immediate construction of the base. On November 30, 1942, a petition for condemnation was filed in the District Court, pursuant to the Second War Powers Act, and an order of possession was entered the same day. Thereafter, on January 26, 1943, a declaration of taking, executed by the Secretary of the Navy, was filed in accordance with the provisions of the Declaration of Taking Act, 40 U.S.C.A. § 258a. $62,000, the Government's estimate of the value of the property, was paid into court. Commissioners appointed shortly thereafter filed their report on May 18, 1944, fixing the value of the property at $95,772.75. Both parties excepted to this report and demanded a jury trial. At the trial of the cause, the court ruled that the value of the property should be fixed as of the date of the license, August 10, 1942, and declined to hear testimony as to the increase in its value between that date and January 26, 1943. Testimony as to the property's value on August 10, 1942, ranged from the $62,000 fixed by a Government appraiser, to $200,443, set by one of the witnesses for the owners. The jury determined the value to be $77,500, and from a judgment

entered on this verdict, an appeal was taken by the owners, hereinafter referred to as appellants.

The issues raised on this appeal are the court's ruling that the date of the license was the determinative date for deciding the value of the property, a ruling that the burden of proof was upon the Government, certain rulings with respect to the admission and exclusion of evidence, and the court's instruction that the value of the property must be computed as a unit, without regard to what it might be worth if sold in separate parcels.

■ The majority rule, which has been generally adopted in the federal courts, places the burden of proof of value in condemnation proceedings upon the landowner. A number of jurisdictions, however, follow a contrary view and place the burden upon the condemnor. Lewis on Eminent Domain (3rd ed., 1909) § 645, 651; 29 C.J.S., Eminent Domain, § 271, p. 1257; United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390. The record does not show which practice is customary in the State Courts of North Carolina. But, in any case, the assignment of the burden of proof to the Government is not a material error. Bethel v. Mathews, 13 Wall. 1, 80 U.S. 1, 20 L.Ed. 556; Audit Company v. Taylor, 152 N.C. 272, 67 S.E. 582. Appellants admit that the assignment of the burden of proof to the opposing party is normally considered to be an advantage and, in any event, a matter resting generally within the discretion of the trial court. They seek to avoid these rules, however, by complaining of the failure to receive the advantage of opening and closing the argument and of alleged inadequacies in the judge's charge to the jury on the question of the burden of proof. On the former point, the law is well established that the judge's discretion in allocating the opening and closing arguments is not reviewable on appeal. Day v. Woodworth, 13 How. 363, 370, 54 U.S. 363, 14 L.Ed. 181; Lancaster v. Collins, 115 U.S. 222, 225, 6 S.Ct. 33, 29 L.Ed. 373. And the judge's charge to the jury, while limited in the precise words referring to burden of proof, was, when read as a whole, entirely adequate. It may be noted that the entire concept of the burden of proof does not lend itself too readily to application in condemnation proceedings and, in at least one jurisdiction, it has been entirely rejected.

Martin v. City of Columbus, 101 Ohio St. 1, 127 N.E. 411.

■■ The contention of appellants that reversible error occurred in certain rulings on the admission and exclusion of testimony is not sustained on a careful investigation of the record. The use of certain tax returns to test the credibility of one witness was clearly described to the jury as admitted for that one limited purpose only on entirely adequate instructions by the court. While one or two of the questions asked another witness might be classed as unfortunate, they cannot constitute reversible error when clearly explained, especially when nothing more objectionable occurred in the testimony, which occupied 430 pages of the record. Similarly, the exclusion of proffered testimony as to offers to purchase certain piling on the land was entirely in accord with settled law. Sharp v. United States, 191 U.S. 341, 348, 24 S.Ct. 114, 48 L.Ed. 211; Lynch v. Venable, 168 N.C. 531, 536, 84 S.E. 855, 857.

■ Appellants further contend that the diverse nature of the land in question should take it out of the general rule, recently restated by the Supreme Court, that "a parcel of land which has been used and treated as an entity shall be so considered in assessing compensation for the taking of part or all of it." United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L. Ed. 336, 147 A.L.R. 55. The record shows that no complaint on this score is justified, particularly in the light of the considerable amount of testimony which was admitted as to the value of specific items or parts of the property. The exclusion of further testimony bearing on amounts which might have been realized from the property under various theoretical schemes of subdivision, was entirely proper. United States v. 3.544 Acres of Land, etc., 3 Cir., 147 F.2d 596, 598. And this Court will take judicial notice that it is not an uncommon phenomenon for large farms to include substantial areas of timberland or other adjuncts not absolutely essential to the production of crops without thereby losing their character as integrated units.

■ The remaining objection concerns the court's ruling as to the date on which the value of the property was to be determined. This point is not without difficulty and clear authority from a comparable situation seems to be lacking.

254

Appellants contend that the Government, having elected to act under the procedure of a declaration of taking, is controlled and bound thereby so as to be committed to the date of filing this declaration as its date of taking. They further contend that in any event the Government is foreclosed from reliance on the August date by virtue of its own reliance on November 30 as the determinative date in its petition for condemnation and in the order appointing commissioners issued pursuant thereto. Stress is laid on the fact that the Government was not finally committed to the acquisition of the fee simple title until the filing of the declaration of taking and up to that time might have withdrawn at will by paying merely for the damages caused by its use and occupancy.

To these contentions the Government replies that the contract of the parties governs; and that the parties plainly contracted that, if the Government later devided to acquire the fee, it should be valued as of the date of the license. Further, it is argued that the date of taking possession governs, even had there been no contract between the parties.

Had there been no license in question, the date of taking, we think, would be the date of the Government's entry into possession, since this preceded both the commencement of the action and also the filing of the declaration of taking. Danforth v. United States, 308 U.S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240; United States v. Rogers, 255 U.S. 163, 169, 41 S.Ct. 281, 65 L.Ed. 566. But such entry into possession must be with the intention of exercising the right of eminent domain, and appellants contended that in the instant case the Government's entry under a limited license required some additional act on its part to convert its entry into a formal taking so as to fix the value of the property, namely, the filing of the declaration of taking or, in the alternative, the commencement of condemnation proceedings.

This view would find substantial support were it not for the seemingly clear provision in the license that "the said land shall be valued as of this date." Appellants seek to avoid the force of this provision by a claim that this provision controls solely the value to be placed on the property in determining payment for temporary use and occupancy. But this seems a strained and unduly narrow interpretation in the light of the surrounding circumstances. Accordingly, we find that the parties really contracted as to the date at which the property was to be valued, in case the fee should be later taken by the United States.

This contract, as so construed, was properly enforced in the proceedings before the District Court. The power of the parties to bind themselves by contract as to valuation in condemnation proceedings by prior contract is sustained by the authorities. Danforth v. United States, 308 U.S. 271, 282, 60 S.Ct. 231, 84 L.Ed. 240; Wachovia Bank & Trust Co. v. United States, 4 Cir., 98 F.2d 609, 612.

We find no reversible error in the judgment of the District Court and it is affirmed.

Affirmed.