## UNITED STATES v. CITY OF NEW YORK et al.

No. 73, Docket 20721.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1948.

Harry T. Dolan, of Brooklyn, N. Y., A. Devitt Vanech, Asst. Atty. Gen., and Roger P. Marquis, of Washington, D. C., Attorney, Department of Justice, for the United States.

Alfred D. Jahr and Charles F. Preusse, Acting Corp. Counsel, both of New York City (Harry E. O'Donnell, of New York City, of counsel), for City of New York.

Henry Herz and Parsons, Closson & McIlvaine, all of New York City (William M. Sperry, 2d Clinton T. Roe, and Charles P. Kramer, all of New York City, of counsel), for Brooklyn Eastern District Terminal.

George Bergen and Skinner & Bermant, all of New York City (Jacob W. Bermant and Bernard L. Bermant, both of New York City, of counsel), for National City Bank.

A. Albert Solomon, of Brooklyn, N. Y., for John Celio et al.

Charles Lamb, of New York City, for George Basso et al.

Nathan L. Goldstein, of New York City, for Frank Mosca et al.

Ira L. Gluckstein, of New York City, for Bright Star Provision Co. et al.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The United States appeals from awards made to the City of New York and various other claimants for the condemnation of a tract of land next to the Brooklyn Navy Yard, known as the "Wallabout Market," upon the ground that the awards were too large. The Brooklyn Eastern District Terminal appeals from the award to it on the ground that it is too small; some of the individual claimants appeal because their claims for fixtures were not allowed in an earlier judgment. The tract of land was of more than fifty-three acres in area on both sides of Washington Street, Brooklyn; the western parcel being on the waterfront, much the greater part of it under water. Those parts of both parcels which were dry had been "improved": That is to say, streets and sidewalks had been opened and paved; bulkheads had been built on the waterfront; sewers and watermains had been laid. It was occupied for business purposes, being for the most part covered with buildings: some of them owned by the City; some by private persons. Upon the land under water six piers had been built out from the bulkheads; and one of these was used as a "freight terminal" under a contract between the City and the Brooklyn Eastern District Terminal. The United States deposited $4,000,000 in payment for

528

the whole area—later increased by $261,230—and asked for the liquidation of all claims. The judge appointed three commissioners, whose personnel changed several times during the hearings, and who sat for more than two years taking evidence. Their report was in five sections: the first liquidated the City's claim at $4,431,687; the second, the claims of private owners for buildings, leaseholds and fixtures at $841,031; the third, the claim of the Kings County Refrigerating Co. at $8,150; the fourth suspended an allowance on the claims of two railroads; and the fifth liquidated the claim of the Terminal at $178,746. Because of objections by the United States the judge sent back the report for corrections—chiefly to apply the "Unit Rule" so-called—and the Commissioners did make a number of corrections in a "Supplemental Report" filed on August 29, 1946. With some minor changes the judge confirmed this report and entered judgment accordingly; as will appear, it is not necessary to consider the later judgment which professed to modify the first.

The Commissioners made their award to the City—which we quote in the margin[1]—in twelve separate items; and the first objection of the United States is that in so doing they violated what it calls the "Unit Rule" which forbids the separate appraisal of land and improvements upon it. "Just compensation" is a federal question, as to which the state decisions are not authoritative;[2] and for argument we shall assume that this includes, not only ascertaining those interests which must be paid for—excluding, for example, "consequential damages"—but how their value shall be measured in dollars. Although the "Unit Rule" would seem to be in the shadow-land between substance and procedure, and as to the last we look to the state law,[3] we shall not try to assign any place to it, because we are not aware of any ascertainable difference upon the point between the state and the federal decisions. Indeed, we think that it is an undue simplification to extract from the books any "Unit Rule" whatever, in the sense of general authoritative directions. What has happened, so far as we can see, is that, as different situations have arisen, the courts have dealt with them as the specific facts demanded. One of these situations has been when a parcel or plot of land has been improved, and when—as is substantially always the case—it is impossible to separate the improvements so as to transfer them independently. In such situations the only exchangeable property is the union of "site" and improvements; and this, being indissoluble for purposes of transfer, must be valued as one. The argument runs that, because of this it is erroneous as matter of law ever to add together a supposititious "site" value and a supposititious improvement value. The argument, so put, is undoubtedly a highly important caution, when the attempt is made to appraise improved land by a process of cumulation; but we question whether it has any further office than to keep before the tribunal the only relevant objective: the exchange value of the newly emerged unit. It is true, when an area has been subdivided into plots that the very fact that these have been made separately saleable, will ordinarily make it desirable to appraise the whole by separate valuations of each plot; but even that is not, so far as we can see, an inexorable condition. Be that as it may, it certainly does not follow, because "site" and improvements have been inextricably welded, that

---

[1] We accordingly, make the following awards to the City of New York as the fair market value as of April 1st, 1941:

| | |
|---|---|
| For land and land under water | $3,166,487.00 |
| For City-owned buildings | 298,750.00 |
| For Piers | 143,000.00 |
| For Bulkheads | 403,000.00 |
| For Platforms | 43,350.00 |
| For Pier Sheds | 70,000.00 |
| For Bulkheads, Sheds | 53,100.00 |
| For Water mains and appurtenances | 21,000.00 |
| For Sewers | 100,000.00 |
| For Street Lighting Equipment | 1,000.00 |
| For Surface Improvements, pavements, curbs and sidewalks | 84,000.00 |
| For Refrigeration and Brine Lines | 48,000.00 |
| Total | $4,431,687.00 |

[2] United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

[3] § 258, Title 40 U.S.C.A.

it is never possible to come at their joint value by attributing one factor to "site" and another to improvements. Value, especially when we are dealing with non-fungibles, is in application as impalpable a concept as can be, and we should be unwilling to circumscribe the approach to it to the opinions of experts. All that we can gather from the books is that the tribunal must be strictly on guard that it has to do with an indivisible object of transfer.[4]

■■ Upon this appeal we must accept without inquiry the appraisal of the Commissioners, so far as concerns the sufficiency of the evidence to support the awards.[5] That does not, however, permit us to overlook errors which the record shows that they have fallen into in their application of legal principles: and in the case at bar such errors do appear. The first item: "Land and Land Under Water," included the whole area, although the witnesses put different overall footage values upon the dry and wet land. The Commissioners apparently used a general footage value for the dry land, because they made separate assessments for the buildings only in each "Damage Parcel." This appears to us impermissible; each plot had its own value as much as each building; each should have been separately assessed. However, even though we were to ignore this, there was a fatal error in the way in which the overall "site" value for the dry area was computed. The Commissioners assumed a value for the "raw land"—that is, without any improvements—and then added the value contributed by the improvements. There was no conceivable method by which the value of the "raw land" could be appraised either as a whole, or in plots. The parcel as a whole was part of a thickly settled industrial community; it had not been "raw land" for decades, and any valuation of it in its original state was inevitably factitious. Indeed, the City's own witnesses did not make that absurd attempt; they expressly said that they were valuing the area upon the assumption that it had already been improved; though it was not clear just what improvements they were assuming to exist. Thus the award was inevitably wrongly computed. On the one hand, if we knew which of the succeeding items were presupposed to have been added in calculating the first item, there would be pro; tanto a duplication. On the other hand, if we accepted all the later items we should have to leave the first item standing as the assessment of an imaginary object, incapable of assessment. There is no escape therefore from a new appraisal of the "site" value of the dry area.

■■ We have hitherto been speaking only of these improvements: bulkheads, water-mains, streets, sewers, lighting. It is practically impossible to assess the land on the assumption that these are absent; but that is not true of other improvements, such as buildings, sheds, piers and refrigerating lines, which for convenience, we shall call "structures." If we suppose these to be absent, it is still possible to arrive at a "site" value; and, as we have said, in spite of the dangers inherent in cumulating several factors in a single award, the Commissioners were not rigidly forbidden so to proceed. Nor do we see any reason to suppose that in assessing the second item of the City's award they did not limit this factor to the amount which the buildings, as they stood, added to the value of the "site." Indeed, the United States itself has recognized the propriety of this method, by settling with a number of private tenants upon just this basis. We will not therefore

[4] Devou v. City of Cincinnati, 6 Cir., 162 F. 633; Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884, 885, 888; United States v. Meyer, 7 Cir., 113 F.2d 387, 397; United States v. Becktold Co., 8 Cir., 129 F.2d 473, 476, 481; United States v. Wise, 4 Cir., 131 F.2d 851, 852–853; Fain v. United States, 6 Cir., 145 F.2d 956; United States v. 3.544 Acres of Land, etc., 3 Cir., 147 F.2d 596, 598; United States v. Certain Parcels of Land, etc., 5 Cir., 149 F.2d 81; Bank of Edenton v. United States, 4 Cir., 152 F.2d 251; Clark v. United States, 8 Cir., 155 F.2d 157; Kinter v. United States, 3 Cir., 156 F.2d 5; In Re New York, W. S. & B. R. Co., 35 Hun, N.Y., 633; In Re City of New York (Delancey Street), 120 App.Div. 700, 105 N.Y.S. 779.

[5] United States v. Village of Highland Falls, 2 Cir., 154 F.2d 224; United States v. Beard's Erie Basin, 2 Cir., 157 F.2d 956.

disturb these items of the award; that is to say: "Piers," "Platforms," "Pier Sheds" and "Refrigeration and Brine Lines." The remaining item: "Bulkheads, Sheds," is not explained; so far as it consisted of bulkheads it cannot be added; so far as it consisted of "Sheds" it can be. Obviously, it must be broken down. We cannot agree that the state decisions cited by the City allowed the separate appraisal of bulkheads, when they are part of a larger area condemned; but, if we are wrong, we do not read § 258 of Title 40 U.S.C.A., as binding us so straitly, even though the question be one of procedure. So much therefore for the award to the City.

*The Award to the Private House Owners.*

The Commissioners made an award to the City's tenants composed of three items. The first was for their interests in the houses they had built on the plots, which they had reserved in their leases; the second was for the value of their terms for years, as interests in the land itself; the third was for their interests in the irremovable fixtures. The same considerations which we have just mentioned as governing the "structures" belonging to the City apply to the first and third of these items: buildings and fixtures. So far as appears, the Commissioners meant to assess the values which these added to the "site" values, and they will stand as such. The same is not true, however, of the second item: the award for "leasehold" interests. The value of the lessees' terms for years was part of the value of the fee itself, and any separate allowance for them was obvious duplication, so far as concerns the United States. That was the basis of the decision in Carlock v. United States,[6] and —as we read the opinion—of that in In re City of New York (Delancey Street),[7] though the opinion is not altogether clear. It was indeed proper to assess the value of the residue of the terms for years in order to divide the award to the City, as between itself as remainderman and the lessees as termors; but that division had no place in the award to the City against the United States. Nor is it possible to accept the City's statement that this item was "unquestionably" subtracted from the City's award; on the contrary, it "unquestionably" was not, as appears from the "Supplemental Report." In this the Commissioners raised the award for the leasehold in Damage Parcel No. 78 from $837 to $2200, a change of $1363. Had their practice been to reduce the award to the City for the "site" value by the award for "leaseholds," they would have reduced the first item of the City's award correspondingly. They did not; they made no reduction whatever in the City's award. Ex pede Herculem. The item for "leaseholds" must moreover be reassessed before it is allowed against the City; the assessment of the "site" values may change it.

*The Other Awards.*

The next award is to the Kings County Refrigerating Company, divided into $300 for the value of its brine line, and $7500 for the value of the unexpired term of its lease from the City. The first is to be understood as an added value to the land and is in the same class as the award for the City's own refrigerating lines. As such it was proper to allow it against the United States. The second is in the same class as the "leasehold" interests of other tenants; it cannot be added to the value of the fee, and must be subtracted from the award to the City for land when that is finally fixed. Its amount we will not disturb.

Next are refunds of prepaid rents of two railroads which should be paid by the City, as the Commissioners provided in their supplemental report.

Last is the award to the Brooklyn Eastern District Terminal. This is in two parts: $51,421 for the "unamortized cost of the improvements," and $127,325 for "the rights and interests" under a contract with the City. Although the phrase, "unamortized cost," is not a happy one, we read the item as an appraisal of the value added to the fee, and as such it is on the same basis as other "structures." It will be charged against the United States. The

---

[6] 60 App.D.C. 314, 53 F.2d 926.

[7] 120 App.Div. 700, 708, 105 N.Y.S. 779.

other item we considered in Brooklyn Eastern District Terminal v. City of New York.[8] Although we distinguished the right from a franchise or a term for years, we nevertheless held it to be an interest in the land, and that, as such, the Terminal was entitled to just compensation for it. Obviously, whatever it is, it is an interest carved out of the fee and to be deducted from the City's award. We affirm the amount of both items upon the Terminal's appeal, which rests upon the untenable argument that the Commissioners failed to appraise the values as the evidence required. As we have already said, we have no jurisdiction to review the awards of commissioners when it does not appear that they have adopted some erroneous rule of law. Incidentally, it is naive to the last degree to argue that the Commissioners were bound to accept the elaborate computations of the Terminal's expert.

With the reversal of the judgment the question becomes moot whether the judge had jurisdiction to change his disposition as to the allowances for fixtures. As has appeared, the "site" value of the dry land must be appraised de novo; this had best be done by plots. It does not clearly appear at what value the Commissioners appraised the wet land, and that must be done. However, when it has been done, since we are assuming that the item, "Piers" in the City's award represents an addition to the "site" value, it will not be necessary to reassess that; it may be added to the "site" value of the wet land. It will not be necessary to refer the issues to a new panel of commissioners; and it would be extremely dilatory and expensive to do so. Of those who made the reports one is dead and another is now disqualified; thus it would be necessary to appoint two new ones, who would at least have to go over the old testimony, besides holding new hearings. As we held in United States v. Lambert,[9] it is not necessary to proceed by commissioners at all, certainly not in time of war; the judge did not need to do so in the first instance as he said in his opinion.[10] However, it would now be an abuse of discretion to adopt that course again; and we direct the judge to proceed upon the evidence already taken, coupled with such added evidence as the parties may wish to adduce upon the issues opened by this opinion. To recapitulate, he will accept as finally determined the following items of the award to the City: "City-owned buildings," "Piers," "Platforms," "Pier Sheds" and "Refrigeration and Brine Lines." He will accept as finally determined the items, "Buildings" and "Fixtures," in the award to Private Owners, and not deduct them from the City's award. Unless the City consents, the item, "Leaseholds" will have to be reassessed for the reason already given; and it will be deducted from the City's award. He will treat as finally determined the two items of the award to the Kings County Refrigerating Co. and will deduct the value of the term from the City's award. He will leave unchanged the awards to the railroads. He will treat as finally determined the two items of the award to the Brooklyn Eastern District Terminal, but will deduct the allowance for the term from the City's award.

Judgment reversed and cause remanded for further proceedings in accordance with the foregoing.

---

[8] 2 Cir., 139 F.2d 1007, 152 A.L.R. 296.
[9] 2 Cir., 146 F.2d 469.

[10] United States v. 53¼ Acres of Land, D.C., 48 F.Supp. 768.