UNITED STATES v. 53¼ ACRES OF LAND, MORE OR LESS, IN BOROUGH OF BROOKLYN, KINGS COUNTY, New York, et al.

No. M–494.

United States District Court
E. D. New York.

Oct. 21, 1948.

See, also, 139 F.2d 1007, 152 A.L.R. 296; 165 F.2d 526, 1 A.L.R.2d 870.

Harry T. Dolan, Sp. Asst. to Atty. Gen. of United States, John P. McGrath, Corporation Counsel of City of New York and Philip L. Wellens, Asst. Corporation Counsel, both of New York City, for United States.

Parsons, Closson & McIlvaine, of New York City (Clinton T. Roe, Charles P. Kramer, William M. Sperry, 2d, and Henry Herz, all of New York City, of counsel), for Brooklyn Eastern District Terminal.

ABRUZZO, District Judge.

On April 1, 1941, the Government filed a declaration of taking condemning a large parcel of real estate with buildings and appurtenances thereon situated in what was known as Wallabout Market, Brooklyn, New York. At that time, the Government deposited the sum of $4,000,000 in the Registry of this Court as the estimated just compensation to be paid for the property

so condemned. On May 11, 1945, pursuant to an amendment of the declaration of taking, the Government deposited an additional sum of $261,230 and, on June 3, 1948, it deposited the sum of $1,660,687.48. A total sum of $5,921,917.48, therefore, was deposited at various times. The last deposit represents the deficiency of $1,126,586 required to be paid for the property condemned, and the Government claims and contends that the balance of $534,101.48 represents estimated deficiency interest, and that $549,245.89 is the total deficiency interest required to be paid on all of the awards made in this so-called Wallabout proceeding. The interest has been computed at the rate of 6 per cent per annum and is broken up according to the petitioner-plaintiff's contention as follows: Interest on a deficiency of $1,387,816 from April 1, 1941, to May 10, 1945, and interest on a deficiency of $1,126,586 from May 11, 1945, to June 2, 1948, inclusive. Summarizing the Government's action, it is its contention that any interest to be awarded in this proceeding must be based upon the moneys deposited by the Government and the dates they were so deposited, and based upon this conclusion the sum of $549,245.89 is the amount of interest it owes on all the awards made in this proceeding, and that it is the Court's function and duty to break up and allocate the exact sum due on each award. The Government has not sought to categorically itemize the interest on each award, but has made the deposit of interest to be awarded to the claimants as a collective group, making it necessary for each of the persons to whom an award was made to make an application for the interest they claim to be entitled to, and then it will devolve upon the Court the duty to apportion this interest. The Government did not file a brief to aid the Court in making its determination on the conflicting and vexatious question, especially in view of the large amount involved.

Although this case has been on appeal before the Circuit Court of Appeals in various phases, in order to determine this complex question of interest, it might not be amiss to throw a little light on the historical background of the proceedings. The various phases and circumstances growing out of this condemnation are exceptional to say the least, and I have been unable to find a condemnation proceeding, either state or federal, that is comparable. The law to be applied must necessarily be gleaned from various decisions made in condemnation proceedings which act as a guidepost to a great extent.

## History

The City of New York was the owner of all of the land and land under water taken in the proceeding. It was also the owner of bulkheads, piers, platforms, sheds, some individual buildings, streets, and market ways with various improvements. As owner of this land the City of New York entered into term leases with various tenants for the occupation of portions of the land. Pursuant to these leases, buildings were erected and occupied by these lessees. The leases contained provisions of renewal at stated intervals with ownership of the buildings reverting to the City in the event of forfeiture of any of the leases. Many of these lessees appeared in this proceeding, filed claims, and awards were made representing the market value of their structures, and awards were also made representing the market value of the unexpired terms of their leaseholds. During the pendency of these proceedings a great many lessees made settlements directly with the Government. These were approved by order of the Court and paid. We are not concerned at this time with claims so settled.

As to the claims not adjusted, a great many lessees made application to this Court for withdrawal from the fund on deposit for the estimated market value of their interests, and various orders permitting partial payment to these claimants were made. In order to withdraw these moneys, motions by the various claimants had to be made. To a great extent the Court had to rely upon the affidavits submitted in support of these claims and the assistance of the Government's counsel in order to determine the amounts which should be released.

Many claims were filed for trade fixtures located in the structures. Some of the

fixture claims were settled directly by the Government, and to others awards were made amounting to a substantial sum which now have to be paid. If this were not enough to complicate matters, some of the lessees and sublessees appeared in the proceeding requesting compensation for trade fixtures installed by them and used in connection with the operation of their business. To some of these sublessees awards were made which now have to be paid.

The Brooklyn Eastern District Terminal operated a freight terminal and maintained a float bridge, float bridge protector rack, dock approaches, and tracks with necessary railroad structures, which it claimed was by virtue of a franchise with the City of New York. The City of New York claimed the Brooklyn Eastern District Terminal operated by virtue of a license and that it was not entitled to compensation. The Government contended that if the Brooklyn Eastern District Terminal was entitled to any award it would have to be carved out of the award made to the City. As a result of an appeal to the Circuit Court an award was made to it of $127,325 for the intangible rights which it owned under agreements with the City to be deducted from the City's award, and the sum of $51,424 chargeable against the Government for the unamortized value of its improvements. 2 Cir., 139 F.2d 1007, certiorari denied City of New York v. Brooklyn Eastern District Terminal, 322 U.S. 747, 64 S.Ct. 1758, 88 L.Ed. 1579; United States v. City of New York, 2 Cir., 165 F.2d 526, 1 A.L.R.2d 870.

The Kings County Refrigerating Company had a franchise from the City to supply refrigeration to the occupants of Wallabout Market, and it obtained an award of $7,500 for the value of the unexpired term of its lease, chargeable to the City's award, and the sum of $300 chargeable to the Government for the value of its brine line.

The Pennsylvania Railroad and the New York Central Railroad obtained awards for refunds of prepaid rents which they had paid to the City of New York for a period extending beyond the date of vesting title in the Government as follows: The Pennsylvania Railroad $1,666 and the New York Central $2,274.70 payable out of the award made to the City.

With respect to the interest which must be awarded to the City of New York, the following facts are pertinent: On July 8, 1941, the City of New York made a motion for an order permitting it to withdraw the sum of $3,000,000 out of the deposit of $4,000,000 made on April 1, 1941, as partial payment on account of compensation to be ultimately awarded. On July 18, 1941, the motion was granted to the extent of $2,500,000 and was paid to the City on that date. The delay in making this motion on the part of the City until July is not pertinent, suffice to say that the City of New York could have made this motion immediately after April 1, 1941, but the record indicates that it did not.

The Court was in no position, as it will appear from the facts to be related, to estimate to any certain degree whether the amount of $3,000,000 should have been released to the City. The payment of $2,500,000 was arrived at as a result of a conference between the Court, the attorney for the Government, and the attorney for the City. The $500,000 was retained as security to cover contingencies which might subsequently arise in the proceeding. It is evident from the brief history which I have outlined that many contingencies might have arisen, and the Government sought to protect itself from an overpayment if any award was ultimately made for less than the amount requested. The Court was normally and naturally concerned with this phase of the proceeding.

After the Commission had fixed the various awards and this Court confirmed the report of the Commissioners, an appeal was taken to the Circuit Court of Appeals. As a result of an opinion rendered in the case by the Circuit Court, the Government and the City came to an amicable adjustment of their differences and, on June 8, 1948, a stipulation was entered into wherein it was provided that the City was entitled to receive the sum of $4,008,687 as the value of all its rights in the market, exclusive of any interest to which the City

might be entitled, and from this sum the City of New York was required to pay awards for certain subordinate interests.

## Respective Claims

The City of New York now contends that the Government's position with respect to the interest which it deposited and the way it arrived at the amounts due is erroneous, and that it is in fact entitled to receive interest at the rate of 6 per cent per annum on the total $4,008,687 from April 1, 1941, the date of vesting of title in the Government, to July 18, 1941, the date when it was allowed to withdraw $2,-500,000, and interest on the balance of $1,-508,687 from July 18, 1941, to the date of actual payment of the award. It is also claimed that awards for fixtures and all the other awards must bear interest at 6 per cent from the date of vesting of title, and that the claimants who withdrew certain amounts of money and then received awards for more than the amount withdrawn are entitled to full interest from the date of vesting of title on the unpaid balance. Curiously, the City contends that it is required to pay only 4 per cent per annum on the amounts carved out of its award because of Section 3-a of the General Municipal Law of the State of New York, Consol.Laws, c. 24, which reads as follows:

"The rate of interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed four per centum per annum. * * *"

## Decisions

This condemnation proceeding stems from Section 258a of the Declaration of Taking Act, United States Code, Annotated, Title 40, which reads as follows:

"§ 258a. Same; lands, easements, or rights-of-way for public use; taking of possession and title in advance of final judgment; authority; procedure

\* \* \* \* \* \*

"the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. * * *".

This section is the nub of the interest question. It is not disputed that this statute provides that the Court, upon the application of parties in interest, may from to time direct payments to interested parties out of the amount deposited by the Government in Court in partial payment of just compensation. It is not disputed that all claimants of any interest in this property should receive full and just compensation and interest should be added to the amount finally awarded. The dispute here arises, however, from the last sentence of this section which reads as follows:

"* * * but interest shall not be allowed on so much thereof as shall have been paid into the court. * * *"

Several interested parties seek an interpretation of this statute and request that interest should be allowed to them by the Court on the awards made to them from the date of taking of title by the Government. It seems to me that whether the Government met the requirement of this statute depends upon the various steps taken by it in this proceeding. At the very beginning when the declaration of taking was filed a schedule containing the names and addresses of the various claimants and showing the damage parcel numbers, tax block and lot numbers was annexed to the declaration. On May 11, 1945, a similar schedule was annexed to the amended declaration of taking filed on said day. There was no attempt to break down or allocate the $4,000,000 or the $261,230 deposited to the individuals named in the schedules, and there were many. There was apparently good reason for this. In view of the complicated type of condemnation proceeding it was rather

difficult for the Government to allocate to these individuals specific amounts. On the other hand, the converse was true. Each owner of an interest in the land was unable to determine what amount was allocated to him by the Government. The determination of any applications for withdrawal coming before this Court, therefore, was based upon affidavits of the movants and whatever information the Government gave me. From that I had to determine the amounts to be paid. As the proceeding progressed, many settlements were made by the Government, and as a result of stipulation orders were made for the withdrawal of money from the Registry of the Court. As I have stated before, on July 18, 1941, $2,500,000 was directed to be paid to the City of New York. It would strain one's sense of proportion to be able to determine, even with the aid of an expert accountant, just what the situation was that existed at any given time, or for the Court to make an order for partial payment on any particular application without the aid of his own expert accountant or real estate expert. All that the Court knew was the amount which was left on deposit. I do not believe that the Government has met the burden of the statute, for it was clearly the intention of Congress to create a condition that when one's property was taken a stipulated amount was to be deposited in Court by the Government for his benefit which he immediately could take. He then had the privilege of litigating whether he was entitled to more, and there is no dispute that, if he was awarded a greater amount than that deposited, 6 per cent interest would have to be added to that amount. The Government in depositing the sums of $4,000,000 and $261,230 in bulk without filing a schedule or a prospectus allocating a certain amount to each individual did not comply with the clear intent of the statute, and it seems to me that it was casting an unfair burden on the Court. As an example, I might again cite that when these motions were made by different owners for the purpose of withdrawing money I had to determine what amounts to allow from the moving affidavits and the Government's contention as to

values. Undoubtedly, before the Government filed its declaration of taking and deposited $4,000,000 it must have necessarily had some knowledge of the value of the property which it was seeking to take, and based upon this knowledge it arrived at the sum of $4,000,000 as the amount to be deposited. The information which the Government had upon which it based its deposit of $4,000,000 and its subsequent deposit of $261,230 was never furnished to this Court, although in a proceeding as complicated as this it seems entirely fair to say that the Court should have been furnished with some schedule of values arrived at by the Government's experts in order that the Court would not be led astray. When the application by the City for $3,000,000 was made, in retrospect, I can sincerely say that I had difficulty in making a decision. The City requested $3,000,000 partial payment. The Government consented to the payment of $2,500,000. In making this decision I had to be guided necessarily by the agreement reached by counsel.

I am citing these facts for I deem it necessary to indicate that the Government did not comply with the plain intent and terms of this statute. In order for it to toll interest, as I view the statute, it could only do so by earmarking and depositing specific sums to the credit of specific claimants. Some of the cases to be found are very illuminating on this subject. As was aptly said in United States v. 0.45 Acre of Land, etc., 2 Cir., 151 F.2d 114 at pages 115, 116:

"The former owner is entitled to withdraw the deposit at any time and if not deprived of that privilege has no right to interest on whatever he elects not to take. * * * So, too, if the United States opposes the withdrawal by the former owner and the court declines to allow a part to be withdrawn, it has been held that interest may be allowed on the portion withheld. United States v. Certain Lands in St. Louis, Mo., D.C.E.D.Mo., 41 F.Supp. 809. * * *"

The language of that case indicates that the former owner is entitled to withdraw the deposit at any time and this presupposes that a deposit is made to his in-

544

dividual credit. According to that decision, the City would be entitled to interest on the amount awarded to it over and above $2,500,000, to wit, $1,508,687. The withdrawal of $2,500,000 as I have said before was by consent and $500,000 was kept in the Registry of the Court to cover contingencies which might arise for the protection of the Government. It received that protection, but now I do not think they can complain or contend that interest should not be allowed on that $500,000, for while there was not any direct opposition to the withdrawal of $3,000,000 by the Government there was to some extent opposition for protection of the Government. The plain intent of the statute was, therefore, violated in that in order to toll interest the Government should have allocated a certain stated amount for the City to withdraw.

There are many other cases which seem to throw much light on the trend of thought of the courts in line with what I have just stated.

■ Interest is not allowed in eminent domain proceedings as "interest" but as part of the full compensation guaranteed by the Constitution. As was said in United States v. Certain Land in City of St. Louis, Mo., D.C.E.D.Mo., 41 F.Supp. 809, at page 812: "Interest is merely the equivalent of the value of a portion of the property taken, * * *." United States v. Klamath and Moadoc Indians, 304 U.S. 119, 58 S. Ct. 799, 82 L.Ed. 1519.

■ Upon the application of any interested party, the Court may order that the money deposited, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in the proceeding. If the compensation finally awarded is in excess of the amount of money that has been paid to the interested parties, the Court must enter judgment against the United States for the deficiency together with 6 per cent interest on any amount in excess of the sum deposited. United States v. 3.08 Acres of Land. Etc., D.C.S.D.N.Y., 46 F.Supp. 64, 65

The Circuit Court of Appeals for the Second Circuit in United States v. 0.45 Acre of Land. etc., supra, held, 151 F.2d at pages 115, 116:

"The statute under which this land was condemned (the Declaration of Taking Act) expressly provides for interest at six per cent on the final award from the date of taking to the date of payment, but with the exception that 'interest shall not be allowed on so much thereof as shall have been paid into the court.' 40 U.S.C.A. §§ 258a–258e. Ordinarily no interest may be recovered on the amount so deposited. United States v. Foster, 8 Cir., 131 F.2d 3; Garrow v. United States, 5 Cir., 131 F.2d 724; Atlantic Coast Line R. Co. v. United States, 5 Cir., 132 F.2d 959. The statute is designed to give the government possession of the property at once without its becoming bound to pay interest on whatever amount it deposits as estimated just compensation for the taking though liable for interest on any additional amount which may be finally awarded to the former owner. An additional purpose is to give to the former landowner whose title is clear the opportunity to receive an immediate cash payment to the extent of the deposit. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55. The former owner is entitled to withdraw the deposit at any time and if not deprived of that privilege has no right to interest on whatever he elects not to take. * * * So, too, if the United States opposes the withdrawal by the former owner and the court declines to allow a part to be withdrawn, it has been held that interest may be allowed on the portion withheld. United States v. Certain Lands in St. Louis, Mo., D.C.E.D.Mo., 41 F.Supp. 809. * * *"

■ It is, therefore, my fixed conclusion that the City is entitled to interest on the amount of $1,508,687 which represents the difference between the stipulated amount due the City and the amount it withdrew on July 18, 1941, at the rate of 6 per cent per annum to June 3, 1948, the date the Government deposited the deficiency required to be paid for the property condemned. It is not entitled to interest from the date of vesting of title to July 18, 1941, on $2,500,000, for it was plainly due to the City's own neglect and failure to make its motion

that delayed payment. It should not be the beneficiary of its own inaction. The money was here and the motion should have been made immediately. To all other persons who obtained awards from the Government, interest at 6 per cent per annum should be allowed from the date of vesting of title in the Government until the date it made its last deposit, to wit, June 3, 1948. On all awards carved out of the City's award, interest should be allowed at the rate of 6 per cent per annum, as I deem the City's contention of 4 per cent unwise, untimely, and illegal.

In United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566, interest was allowed, not by virtue of state statute, but as constituting a part of the just compensation safeguarded by the Constitution. See Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664.

In the United States v. Miller, 317 U.S. 369, at pages 379, 380, 63 S.Ct. 276, at page 283, 87 L.Ed. 336, 147 A.L.R. 55, the Supreme Court held:

" * * * in condemnation proceedings, a federal court shall adopt the forms and methods of procedure afforded by the law of the State in which the court sits. They do not, and could not, affect questions of substantive right—such as the measure of compensation—grounded upon the Constitution of the United States."

■ If the City's contention were upheld, it would, by virtue of the federal statute out of which this proceeding stems, receive 6 per cent interest and in turn pay 4 per cent interest, making a profit of 2 per cent to which it is not entitled. It cannot be unjustly enriched at the expense of other claimants. The City is entitled to interest under federal statute and must pay interest in accordance with the provisions of the same statute. The General Municipal Law of the State of New York, therefore, is inapplicable.

■ The Brooklyn Eastern District Terminal, on May 5, 1948, made an application for payment of its award. The motion was granted, but the Government resisted payment of its portion, refusing to sign the certificate of title for such payment. It was not until July 7, 1948, that an order granting its application for payment of award was entered. Because of the Government's resistance and refusal interest, therefore, must be allowed to July 7, 1948, on the portion of the award payable by the Government. The City of New York was directed to pay the Brooklyn Eastern District Terminal a certain portion of the award. As to this portion, the Brooklyn Eastern District Terminal is entitled to interest at 6 per cent to the date of payment by the City.

■ Interest must be paid on all the fixture awards. I am unable to determine whether the fixture awards were included in the last deposit made by the Government on June 3, 1948. If this deposit included fixture awards, interest on these awards is directed to be paid only to June 3, 1948, and, if a deposit for fixture awards was not made at that time, interest will be included to the date of payment. The record indicates that prior to June 3, 1948, the Government did not deposit any moneys in the Registry of this Court for the payment of fixture claims. These claims were resisted at all times by the Government. After the Circuit Court of Appeals directed payment of the fixture awards, the Government made a motion before me to vacate the fixture awards.

A new judgment should be submitted to me in accordance with this decision.