854

**UNITED STATES v. CERTAIN PARCELS OF LAND IN BOROUGH OF MANHATTAN, CITY AND STATE OF NEW YORK.**

**In re VETERANS HOSPITAL, NEW YORK et al.**

United States District Court
S. D. New York.

Feb. 8, 1952.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for the United States of America.

Abraham Halprin, New York City, for Gertrude Cohen et al.

Barry, Wainwright, Thacher & Symers, New York City, for American Soc. for Prevention of Cruelty to Animals.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Dry Dock Savings Institution.

Samuel Goldstein, New York City, for Samef Realty Corp., Kesbeck, Inc., and Smolka, Inc.

Lamb & Lamb, New York City, for Bishop Industries, Inc., Socony Vacuum Oil Co., and Bishop-Gutla Percha Co.

Sidney Lewis, New York City, for Clark-Robinson Corp.

John P. McGrath, Corp. Counsel, New York City, for City of New York.

Roe & Kramer, New York City, for Pan-Globe, Inc.

Goldwater & Flynn, New York City, for S. R. & H. Realty Corp., Har Mor Realty Corp., and Knickerbocker Printing Corp.

Edward V. Loughlin, New York City, for Knott Corp. and Gaetano Trani.

Amend & Amend, New York City, for Central Sav. Bank in City of New York.

August G. Klages, Long Island City, for 419 East 24th Street, Inc.

Max Horowitz, New York City, for Harval Properties, Inc.

Harold L. Leddy, New York City, for John A. Garry et al.

Dillon & O'Brien, New York City, for North River Sav. Bank.

Thomas K. Mahlon, New York City, for Christopher Reese, Inc.

George M. Mulligan, New York City, for Frederick F. Singer.

Irving Walsey, New York City, for Harbor Paper Co., Inc.

Nathaniel L. Goldstein, Atty. Gen., for People of State of New York.

Romano & Schenker, New York City, for Peerless Pharmacal Co.

McCanliss & Early, New York City, for Guaranty Trust Co. of New York.

Leonard E. Ruisi, Brooklyn, N. Y., for Josephine Brancato.

Bondy & Schloss, New York City, for Brick & Ballerstein, Inc.

Oscar S. Mann, New York City, for Toby Toys et al.

Judd & Gurfein, New York City, for Claire J. Turim and Hazel Toonkel.

KNOX, Chief Judge.

In the above entitled condemnation proceedings, the Government and the respective owners of Damage Parcels 1, 11, 12, 14, 20 and 21, are content with the awards made by the Commissioners of Appraisal, and such awards, therefore, will be confirmed.

Both the government and the former owners of Damage Parcels 5, 17 and 19 have moved to set aside the awards of the Commissioners. The United States asserts that the awards are excessive. The owners claim that they are inadequate.

As respects Damage Parcels 6, 8, 15 and 16, the government moves to confirm the awards, and the owners ask that they be set aside. As to Parcels 4, 7 and 10, the government moves to set them aside. The owners ask that they be upheld.

In addition to the motions having to do with the fee awards, certain tenants who occupied portions of some of the Damage Parcels have moved to set aside the Report of the Commissioners insofar as it denied compensation to such tenants for trade fixtures which the claimants had installed in their leased premises.

At the outset of this decision, it is pertinent to observe that the membership of the Board of Appraisal was entirely competent, and this is conceded by most of the claimants in this proceeding. The Chairman of the Board, Henry Lichtig, is a lawyer of mature years and in that capacity, as well as in his personal interest, has had wide experience concerning real estate transactions. Paul E. Lord is an attorney who, for years, has represented clients who are constantly engaged in the purchase and sale of business properties of major importance. He also is the attorney for trustees and investors who regularly engage in making mortgage loans secured by real property.

Peyton K. Royal, the third commissioner, is Comptroller of the Union Dime Savings Bank, an institution that annually makes mortgage loans of millions upon

millions of dollars. Its outstanding loans at the present time approximate 100 million dollars.

These recitals are made in order to indicate that damage awards made by a Board of Appraisal, comprised of men with such backgrounds, are not lightly to be set aside or modified. These men viewed the buildings that formerly occupied the various damage parcels. They heard the factual and opinion evidence that was given by the experts who testified for the several parties. They also considered the various exhibits. When all this was done, they conferred and consulted among themselves as to the awards that should be made. They reached unanimous conclusions and, in my judgment, the results of their factual conclusions should not be disturbed by a judicial inmate of a courthouse cloister.

The government suggests that some of the awards be recommitted to the Commissioners for further consideration and deliberation. This procedure, I apprehend, would be a futility. At the time of argument upon the motions now before me, I inquired if any of the parties wished to produce further testimony. None of them expressed a desire to do so.

So far as concerns a suggestion that the disputed awards be sent to a new Board of Appraisal, I am of the belief that this would be an idle and expensive gesture. The buildings and improvements of the condemned property have now been demolished, and they were of substantial value. A new Board of Appraisal, in my opinion, would be utterly unable to come to fully informed decisions as to what awards should be granted for improvements that have now ceased to exist.

In addition to the above considerations, it is to be borne in mind that all the claimants, with two or three exceptions, concede that the Commissioners in reaching their decision as to the valuations of the several damage parcels, adhered strictly to all applicable rules of law, and they had no purpose to be otherwise than fair and just.

From what has been said, it would appear that this is an occasion on which this court should follow the pronouncements of the appellate tribunal of this judicial circuit as they are set forth in United States v. City of New York (Eastern District Terminal), 2 Cir., 165 F.2d 526, 1 A.L.R. 2d 870, and United States v. Village of Highland Falls, 2 Cir., 154 F.2d 224. In the first mentioned case [165 F.2d 529], Judge Learned Hand said: "Upon this appeal we must accept without inquiry the appraisal of the Commissioners, so far as concerns the sufficiency of the evidence to support the awards." And, more recently, the Appellate Division of the New York Supreme Court, Second Department, in the case of Matter of the City of New York (64th Avenue, 218th Street, Borough of Queens), 279 App.Div. 600, 107 N.Y.S.2d 463, 464, it was stated: "Appellants have not shown that the fixing of damage for the taking of their parcels was based upon an erroneous theory of law, or that there were erroneous rulings in the admission or exclusion of evidence, or that the court at Special Term failed to give to conflicting evidence the relative weight which it should have, or that the awards are clearly wrong or such as to shock the sense of justice of the court. In the absence of any such showing an appellate court may not substitute its judgment of damage for that of Special Term."

■ Authoritative declarations such as these persuade me that, in this proceeding, I should approve the compensation awards of the Commissioners so far as the element of quantum is concerned, and this will be done.

The tenants' fixture claims have to do with Damage Parcels 8, 5 and 6.

### Damage Parcel 8

The claims of Knickerbocker Printing Corporation with respect to this parcel are fourfold. This tenant seeks to be compensated for the loss of its leasehold, the unamortized cost of certain improvements, the value of its trade fixtures, and to be reimbursed for its expenses incident to its removal from the premises.

■ The Commissioners awarded $175,-000. to the tenant for the loss of its leasehold. Since there is sufficient evidence be-

fore the Commissioners, as previously indicated, to support the reasonableness of this amount, the same will not be disturbed.

The Commissioners denied any allowance for moving expenses, stating: "* * the Commissioners find that the reasonable value thereof is Seven Thousand Five Hundred ($7,500) Dollars which they would have allowed to the said tenant but for the decision of the United States Supreme Court in United States v. Petty Motors Company, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729. * * * Since under this rule the award for Damage Parcel 8 does not and cannot reflect *Knickerbocker's* costs in vacating the premises, under the terms of Rider 4 to Paragraph 13 of the *Knickerbocker* lease, *Knickerbocker Printing Corporation* (the tenant) is not entitled to anything on this aspect of its claim."

The case above cited does nothing more than deny the validity upon the facts then before the Court of a claim for moving expenses which was made against the Government. In other words, the Commissioners, under the rule of the Petty case, could not have added the moving expenses to the unit award for this Damage Parcel. That case, however, is without bearing upon claims which a tenant may properly assert against its landlord pursuant to the terms of an agreement that exists between them. The unit award having been set for this Damage Parcel without regard to the tenant's moving expenses, the tenant is free to press its claim against the landlord for such expenditures.

To say, as the Commissioners did, and as the landlord now urges, that Rider 4 of the tenant's lease gives the tenant a claim against the landlord for the items mentioned therein only if they are specifically included in the award, gives the Rider a strained interpretation. Since no valid claim can be made for moving expenses under a lease containing a provision such as is included in Paragraph 13 of the lease now before me, the Commissioners were without right to make an award for moving expenses which would adversely affect the United States. On the other hand, if the Commissioners' interpretation of Rider 4 is to be accepted, its contents, in part at least, would be rendered meaningless. The terms of the rider, especially since it was specifically added to the printed form of the lease between the parties, must be accorded its full significance.

Paragraph 13 of the lease reads as follows: "If the whole or any part of the demised premises shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, then and in that event the term of this lease shall cease and terminate from the date when the possession of the part so taken shall be required for such use or purpose and without apportionment of the award."

While it is true that this paragraph of the lease appears, upon its face, to terminate the tenancy upon condemnation of the property, and to do so without rights of apportionment of the unit award, the terms must be read in the light of Rider 4 of the lease. This provides: "The tenant shall be entitled to receive such part of any condemnation award as may reflect the tenant's costs and expenses from moving from the premises, the value of the lease and/or the value of any improvements made by the tenant to the extent that same were not amortized over the balance of the term of the lease."

■ The parties must have intended that the foregoing provisions were to be binding upon them. Otherwise, they would not have added them to the printed form of the lease. While the quoted clauses are somewhat inconsistent, the law under such circumstances is reasonably clear. The New York courts and those of the United States are in agreement that in the instance of a conflict between two such provisions, the matter deliberately added by the parties must prevail. Heyn v. New York Life Ins. Co., 1908, 192 N.Y. 1, 84 N.E. 725; Thomas v. Taggart, 1908, 209 U.S. 385, 389, 28 S.Ct. 519, 52 L.Ed. 845; 12 Am. Juris., Contracts, Sec. 253; Rs. Contracts, Sec. 236(e).

■ Therefore, under the terms of the lease, the tenant is entitled to be reim-

bursed for its moving expenses. The Commissioners, upon all the evidence before them, concluded that $7,500 was the reasonable value thereof. This amount should be paid out of and deducted from the unit award for Damage Parcel 8, as was done with the amount awarded to the tenant for the loss of its leasehold interest.

■ While the same theory would apply to the tenant's claim for the unamortized cost of any improvements made by it, the Commissioners found that there were no improvements for which the tenants were entitled to compensation. The items of work done upon the premises, and for which the tenant makes claim, were not in the nature of voluntary improvements thereto. Instead, they represented the performance of requirements of public authority or the terms of the lease, and the tenants are not entitled to have compensation therefor.

■ So far as the tenant's claim for the value of certain of its trade fixtures is concerned, it may be said that the United States Supreme Court has held that, in a condemnation proceeding, a tenant is to be compensated for the value of its trade fixtures which are destroyed, damaged or depreciated in value by reason of the government taking. United States v. General Motors, 1945, 323 U.S. 373, 383–384, 65 S.Ct. 357, 89 L.Ed. 311. Such trade fixtures, in effect, are considered as improvements to the realty.

The New York decisions are to the same effect. Jackson v. New York, 1914, 213 N.Y. 34, 106 N.E. 758, L.R.A.1915D, 492; Matter of the City of New York, Allen St., 1931, 256 N.Y. 236, 176 N.E. 377; Matter of the City of New York, Whitlock Avenue, 1938, 278 N.Y. 276, 281, 16 N.E. 2d 281.

■ The Commissioners apparently recognized these cases as being statements of the applicable law. They specifically stated on page 5 of their Report that in setting the values for the Damage Parcels, they included the value "of any fixtures and annexations to the realty which have been found to enhance the value thereof as of the date of their taking." They then proceeded to say that the award for Parcel 8 did not include such fixtures. Their reason for this was that the owners had made no claim for the value of the fixtures and that the terms of the lease barred the allowance of such claim as was made by the tenant. The provisions of the lease referred to are Paragraph 13 and Rider 4. As I interpret these provisions, they should not serve to bar the allowance of the tenant's claim.

Paragraph 38 of the lease provides: "Tenant shall have the right at any time and without the permision of the landlord to remove from the demised premises any and all of tenant's machinery, trade fixtures and/or personal property regardless of the manner in which such machinery, trade fixtures and/or personal property may have been affixed to the realty * * *."

This would appear to reserve to the tenant all right, title and interest in these trade fixtures. Whatever may have been the landlord's right, if any, to make claim for the value of these fixtures, the fact that it failed to do so should not inure to the benefit of the United States. Any such result would be an inequitable and most unjust deodand. Therefore, the Commissioners should determine the value of these trade fixtures. The amount is to be added to the unit award for Damage Parcel 8 and given to the tenant.

## Damage Parcels 5 and 6

The tenants of each of these parcels likewise made fixture claims. The Commissioners disallowed them and, contrary to their action with respect to Damage Parcel 8, they specifically stated that the unit awards of Parcels 5 and 6 included the value of such fixtures that enhanced the value of the properties.

The tenants assert that the amount representing the value of their respective fixtures should be paid to them, and not to the landlords, as under the present Commissioners' Report. However, Paragraph 31 of the Peerless Pharmacal lease states that no part of any condemnation award shall belong to the tenant. Paragraphs 21 and 36 of the Smolka lease contain the same

provisions, but with a further provision that the tenant shall receive $2,000.00 of any condemnation award, which I understand has been paid. Likewise, Paragraph 13 of both the Harper Paper and Toby Toys leases provides that there shall be no apportionment of a condemnation award.

In addition to the terms of the leases to which reference has just been had, each of them contains an alteration clause. Paragraph 22 of both the Peerless Pharmacal and Smolka leases, and Paragraph 4 of both the Harbor Paper and Toby Toys leases provides that any alteration, addition or improvement to the premises becomes the property of the landlord when the tenant vacates the premises.

These clauses effectively bar the tenants of these parcels from making valid trade fixture claims. United States v. 21,815 Square Feet of Land, 2 Cir., 155 F. 2d 898.

The Commissioners of Appraisal are directed to hold such further hearings as may be required and to revise and amend their report of July 31, 1951, in a manner that will reflect the rulings hereinabove set forth. In all other respects the report will be confirmed.