**CHICAGO, WILMINGTON & FRANKLIN COAL CO. et al. v. MINIER et al.**

No. 156–D.

District Court, E. D. Illinois.

Aug. 9, 1941.

Adams, Hawxhurst, Hawley & White, of Chicago, Ill., Roy C. Martin and Carter Harrison, both of Benton, Ill., Craig & Craig, of Mattoon, Ill., John C. Quilty, of Centralia, Ill., and F. C. Love, of Oklahoma City, Okl., for plaintiffs.

Weeks, Surles & Potter, of Centralia, Ill., and Baker, Lesemann, Kagy & Wagner, of East St. Louis, Ill., for defendants.

LINDLEY, District Judge.

Plaintiffs sue to enjoin defendants from interfering with their drilling of oil and gas wells upon 120 acres of land in Franklin County. Plaintiffs' title arises by virtue of a mineral deed by defendant Minier to Walter W. Williams, similar in most of its aspects to that involved in Chicago, W. & F. Coal Co. et al. v. Herr et al., 153-D, D.C., 40 F.Supp. 311. Defendants are the grantors in the deed and subsequent assignees and lessees. They insist, as did defendants in 153-D, that plaintiffs are without right to drill for oil.

The deed to Williams conveyed and warranted (1) all "coal, oil and gas" underlying the premises; (2) "the right to mine and remove said coal, oil and gas"; (3) without "liability for damages for surface subsidence" * * * "caused by the mining out of the coal, oil and gas; (4) the "right to make and use underground passages or entries through said property to and from other mines and lands adjacent thereto and the right of removal of coal and other property therefrom; (5) the right to the perpetual use of said passages and entries, for mining purposes and for such other purposes as the grantee, his heirs and assigns shall deem proper; (6) the right to take and use so much of the surface of said land as may be deemed necessary for the purpose of erecting, maintaining and operating, hoisting, air, pumping, and escape shafts, drains, ditches and reservoirs, telephone and electric light, and power wires and the necessary roadways and railroad tracks to and from the same, with the right of way for any railroad necessary or required to carry said coal, oil and gas to market," provided, however, that "all the land the surface of which is so taken shall when occupied be paid for at the rate of $100 per acre." Thus the conveyance thus far is substantially identical with that in 153-D.

This special clause is added, however, in the conveyance now before me: "Within two years all the surface privileges above set forth either for mine switches or for whatever purpose, shall be selected and paid for and the grantor herein will execute a deed therefor. The surface privileges on the remainder of said land shall at the end of said two years be fully released and the right of the grantee herein to take any portion of the surface of the remainder of said lands is at an end."

The deed was executed in 1914. The mine shaft mentioned in the special clause was constructed many years ago. The two years within which surface rights were to be taken have long since expired. Plaintiffs have at no time taken any such rights or declared any intention of taking them but now insist that they have a right to go upon the premises, to drill for oil. The defendant landowners have remained in possession of the surface, farming the same.

■ It is clear from the decision in 153-D that under the law of Illinois, this deed conveyed a freehold estate consisting of the right to take from the premises the oil and gas thereunder as the property of the plaintiff, a fee simple estate in a property right, consisting of the right to drill for oil and to reduce to possession and use the premises necessary to achievement and enjoyment of the fruits of the contract. This right, says the Supreme Court in Transcontinental Oil Co. v. Emmerson, 298 Ill. 394, 131 N.E. 645, 649, 16 A. L.R. 507, is a "corporeal" freehold property right, a freehold interest in the real estate to which it applies and in effect "a sale of a part of the land" including the perpetual right to reduce oil and gas to possession. The court concludes with these words: "The instruments in question conveyed to the appellant an estate in the land mentioned in them which is corporeal property, and the statute requires the value of such property to be included in the total amount of the tangible property of the corporation." Though the court was there dealing with so-called leases for oil and gas, in the later case Triger v. Carter Oil Company, 372 Ill. 182, 23 N.E.2d 55, the court applied the same language to a deed of oil and gas. Thus, under the Illinois decisions, the grant was one of a "corporeal" property right in fee simple in no wise subject to the rule against perpetuities, for the reasons stated in 153-D but conveying an estate which vested immediately.

318

■■ The facts in 153-D part company with those here at this point, for there is in this cause the further question of the effect of the special provision requiring surface rights to be taken within two years. In its essence this clause is one creating a condition subsequent, providing that if the right to use the surface shall not be exercised within the two-year period, the estate therein and thereto shall be void and revert to the grantees. Thus, in Hooper v. Haas, 332 Ill. 561, at 569, 164 N.E. 23, 26, 63 A.L.R. 658, the court said: "If from the nature of the act to be performed and the time required for its performance it is evident that the intention of the parties was that the estate should vest and the grantee perform the act or acts after taking possession, then the condition is a condition subsequent. Phillips v. Gannon, 246 Ill. 98, 92 N.E. 616. The condition that the street be paved within a given time indicates clearly that the village was to take possession of the street, as it did, and the paving was to follow. It was a condition subsequent."

Consequently the entire instrument must be considered as conveying a vested fee, subject, however, to be defeated to the extent mentioned in the provisional clause by breach of the condition therein contained.

■ Plaintiffs insist that this provisional clause applies only to surface rights necessary for sinking shafts and removing coal. Defendants insist that it was a limitation upon the right of plaintiffs to use any portion of the premises for any purpose subsequent to expiration of the two-year period. With their assertion that a failure to comply with this provision would defeat all of the estate of plaintiffs I can not agree. To my mind the clause was not a limitation upon the grant to the extent claimed but rather a condition subsequent working a forfeiture of that part of the estate granted mentioned in the clause. The language of the conveyance is that all the surface privileges "above set forth * * *" or "for whatever purpose" which the grantee may desire to exercise shall be selected and paid for and conveyed by deed. The further provision is that the surface privileges on the remainder of the land, evidently meaning the remainder of surface privileges upon such part as the grantee did not take at the end of said two years, be fully released, and the right of grantee to take any portion of the surface of the remainder of said lands at an end

Plaintiffs' contention is that by the words "all the surface privileges above set forth" the grantor intended that the condition should apply merely to the use of the premises for the purpose of mining coal, for the reason that the preceding language in its essentials refers to coal mining functions only, but it is to be observed that the preceding language does include the surface there mentioned as being necessary "to carry said coal, oil and gas to market." So it seems to me that the fair construction is that the words "surface privileges hereinbefore set forth" include all the surface privileges for mining and reducing to possession coal, oil and gas. However, any doubt as to this is removed by the further language of the proviso, for it is provided that not only that the surface privileges "above set forth" shall end but also surface privileges "for whatever purpose." And the language is further that all surface privileges not so selected within the prescribed period shall be fully released and the grantor entitled to possession and enjoyment of the same. Thus, though the deed conveyed a freehold estate, a corporeal right vesting at the time of the delivery of the deed, and though, under this conveyance as announced in 153-D, the plaintiffs, both by express wording of the deed and by implication of law, received also the right to enter the premises and to use them for the purpose of producing oil and gas, yet the conveyance was subject to a condition subsequent that any use of the surface must be within two years. This is the contract of the parties and to it the court must give effect. Upon the end of the two-year period the right to enter upon the surface for the purpose of producing coal, oil and gas, by stipulation of the parties, ended; thereafter plaintiffs had no right to enter.

From all the clauses of the deed it is apparent that what was uppermost in the minds of both grantor and grantee was the development of the land for mining coal and, when the special provisions were drafted and included, they were made essentially applicable to coal. Only incidentally and secondarily, apparently, did the parties mention also oil and gas. But when the grantor attempted to secure for himself early disposition of the question of how much surface was to be used for removing the coal, by providing that surface rights necessary to such removal should be taken and used only within two years after a certain event, he made the condition all

inclusive and provided that surface rights for "any purpose" should be asserted within two years. This broad language included use of the premises for oil and gas. In the absence of any intent to exclude them a chancellor therefore has no right to ignore this plain condition placed by the parties in the conveyance. Nor, if we consider it a limitation, has the chancellor any right to permit the use of the surface for producing oil and gas after expiration of the specific period.

It is argued by defendants that if this be the conclusion of the court, then the entire grant must fail because it is impossible for plaintiffs to enjoy the oil and gas without the right to enter; that the two are inseparable and that the condition, therefore, has the effect of invalidating entirely plaintiffs' title to the oil and gas. But there is no evidence, and I have no right to assume, that there exist no means by which oil and gas may be removed from the premises other than by wells placed thereon. It is a fact, of which the court will take judicial notice, that oil is a liquid mineral of fugacious character and may be drained by wells located near on adjacent premises. It may also well be that there are methods of taking oil from these premises without disturbing the surface, by oblique wells or otherwise. Thus, in Carter Oil Co. v. Myers, 7 Cir., 105 F.2d 259, the court sustained the right of the Carter Oil Company to the oil underneath a roadway though the company had no right to enter upon the surface of the lot. The court made no comment upon this feature of the case, but did affirm the title of the oil company.

If it were certain that without the right to use the surface the oil company could have no enjoyment of the oil and gas, it might well be that the grant would fail for the reasons urged. But, in the absence of such proof, the right to remove the oil and gas by means other than by going upon the surface remains in plaintiffs. The mere fact that they have now no right to go upon the premises does not work a forfeiture of their property right to remove the oil and gas. Consequently they have the right to remove such oil as they can without going upon the premises. Defendants, on the other hand, have parted with the oil and gas and may not rightfully reduce the same to possession. If, wrongfully, they do reduce it to possession then the oil and gas thus produced, the right to produce the same having been plaintiffs', belongs, under the deed, to plaintiffs.

It is urged by defendants that this court should follow the rule of the Illinois Circuit Court in Roth v. Texas Oil Co., unreported. In that case the trial court held that where the deed expressly provided that the right to mine should not include any right to break the surface, the grant of minerals did not convey the right to drill for oil. But in that case the court was dealing with the validity of the original grant not with the effect of a condition subsequent. It was determining the extent of the original grant as indicated by the language of the parties and not the effect of a condition subsequent, terminating a part of that grant.

I am aware that the situation thus created is somewhat anomalous but it is not one in which a grant is entirely defeated by impossibility of performance created by the terms of the instrument itself. It is the result of a contract of the parties made voluntarily, for a valuable consideration, whereby, by virtue of their own stipulation, there is a grant of the corporeal property right to take and have the oil and gas underneath the premises and, by virtue of the condition subsequent, a forfeiture of the right to go upon the premises for the purpose, there remaining, however, of the grant, the right to remove such oil and gas as can be secured without entering the premises and title to oil removed by others.

I am aware of the rule announced frequently that a court of equity is loath to aid a forfeiture and that one seeking it should be left to his remedy in ejectment. But defendants have at all times been in possession of the surface here involved and, being in possession, have a right to sue in equity. The expression generally found in decisions that equity will not aid forfeitures is that some appropriate act upon the part of the holder equivalent to an entry is necessary in order to evince his election to terminate the estate of the grantee. Mott v. Danville Seminary, 129 Ill. 403, at 415, 21 N.E. 927. Here the defendants are in possession of the surface; they have asserted their exclusive title to both surface and oil and gas. In other words, they have made an actual entry. Therefore, they have the right in equity to enforce breach of the condition subsequent. Instances are found in en-

**320**

forcement of forfeitures in favor of lessors in oil and gas leases for breach of conditions subsequent by the lessees. Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Brown v. Vandergrift, 80 Pa. 142; Munroe v. Armstrong, 96 Pa. 307.

The existing status presents a question of disposition of the proceeds of production from the premises. All such questions including accounting are reserved for the further action of the court.

There will be a judgment in favor of plaintiffs and against defendants defining the rights of the parties as hereinbefore indicated. All findings and conclusions herein are incorporated with my formal findings of facts and conclusions of law by way of reference.

Proper form of judgment may be submitted.