**UNITED STATES v. 53¼ ACRES OF LAND, MORE OR LESS IN BOR- OUGH OF BROOKLYN.**

No. 264, Docket 21255.

United States Court of Appeals
Second Circuit.

Argued May 13, 1949.

Decided July 27, 1949.

See also 83 F.Supp. 433.

A. Devitt Vanech, Assistant Attorney General, Harry T. Dolan, Special Assistant to Attorney General, Roger P. Marquis, S. Billingsley Hill, Attorneys, Department of Justice, Washington, D. C., for U.S.

John P. McGrath, Corporation Counsel, New York City (Harry E. O'Donnell, Bernard H. Friedman, Benjamin Offner, Philip L. Wellens, New York City, of counsel), for appellee City of New York.

Skinner & Bermant, New York City (Bernard L. Berman George Bergen, New York City, of counsel), for appellees National City Bank of New York et al.

Ira L. Gluckstein, New York City, for claimants Hahn's Creameries, Inc., Damage Parcel No. 42, and David Glass and Sons, Wholesale Grocers, Inc., Damage Parcels Nos. 43 and 45.

Nathan L. & Samuel Goldstein, New York City (in dissolution), (Nathan L. Goldstein, New York City, of counsel), for appellees.

Charles Lamb, New York City (Loretta A. Conway, New York City, of counsel), for Stella Cheese Co. et al.

Parsons, Closson & McIlvaine, New York City (Clinton T. Roe, Charles P. Kramer, William M. Sperry, 2nd, Henry Herz, New York City, of counsel), for defendant-appellee Brooklyn Eastern Dist. Terminal.

Before CHASE, CLARK, and DOBIE, Circuit Judges.

CHASE, Circuit Judge.

This appeal is by the United States from that part of the final judgment of the district court which included certain awards of interest as part of the just compensation for property in Brooklyn, N. Y., taken by the government for public use as part of the Brooklyn Navy Yard, pursuant to the provisions of The Declaration of Taking Act, 40 U.S.C.A. § 258a–f. The property was commonly known as the "Wallabout Market" and consisted of fifty-three and one quarter acres of land owned in fee by The City of New York on which numerous improvements had been made. Moreover, there were many lessees of the fee owner who had compensable subordinate interests in the property taken. This situation made the condemnation proceedings exceedingly complex and considerable litigation has

been the result.[1] The opinion below, reported at page 538 of 82 F.Supp. contains pertinent facts and information with which familiarity will be assumed.

The issues now presented are confined to the amount of that part of just compensation payable by the United States to certain claimants under the provisions of the Declaration of Taking Act, 40 U.S.C.A. § 258a which is to be computed like interest at six per cent on the amount finally awarded to make the total award the fair equivalent of payment at the time of the taking. And these issues are narrowed now to the proper effect to be given that part of the statute which provides that "interest shall not be allowed on so much [of the amount finally awarded] as shall have been paid into the court."

The United States filed its petition for condemnation on April 1, 1941 and on the same day filed a declaration of taking and deposited with the court the sum of $4,000,000, then estimated to be just compensation for the property. It thereby acquired title to the property and became liable to pay its fair value determined as provided by law. On May 11, 1945, it amended its declaration of taking and deposited the additional sum of $261,230.00 with the court. On June 3, 1948, it also deposited with the court an additional $1,660,687.48, which made the total of the deposits equal the amount of the final award, $5,387,816.00 plus $534,101.48 on account of estimated deficiency interest of $549,245.89. This deficiency interest was computed at six per cent on the difference between the original deposit of $4,000,000.00 from the date of that deposit on the day the property was taken to the date of the second deposit on May 11, 1945, and then on the difference between the sum of the first two deposits and the amount of the final award from May 11, 1945 to the date of the last deposit on June 3, 1948. That is all the deficiency interest the government is willing to pay.

Claimants insisted that the lump sum deposits made by the government would not serve to cut off interest on the awards from the date of taking to June 3, 1948, which all agree is to be treated as the date of final payment, except as to those portions of the deposits which were actually distributed ad interim and then only from the date of such distributions. They rely on the fact that the deposits were made without any allocation of definite amounts as offered compensation to designated claimants for specific interests in the property taken and on the contention that the government opposed applications for withdrawals and thereby prevented, pro tanto at least, payment from the fund.

The judgment below reflects the views of the court differing somewhat from those of the claimants but reaching practically the same result. Briefly they may be summarized from the opinion above cited as follows: These lump sum deposits did not relieve the government from obligation to pay interest, as part of just compensation, from the date of taking to the date of actual withdrawal when that preceded what is herein called the payment date, June 3, 1945, and when there was no previous withdrawal, to June 3, 1945.[2]

By an arrangement satisfactory to the parties the City has received awards which it became bound to distribute to certain claimants and a subsidiary dispute arose as to whether the City should pay interest to such claimants at the rate of 6% which it

---

[1] See United States v. 53¼ Acres of Land, etc., D.C., 40 F.Supp. 318; Id., D.C., 42 F.Supp. 746; Id. D.C., 47 F. Supp. 887; Id., D.C., 48 F.Supp. 764; Id., D.C., 71 F.Supp. 248; Id., 2 Cir., 139 F.2d 244; Brooklyn Eastern Dist. Terminal v. City of New York, 2 Cir., 139 F.2d 1007, 152 A.L.R. 296; United States v. Brooklyn Union Gas Co., 2 Cir., 168 F.2d 391; United States v. City of New York, 2 Cir., 165 F.2d 526, 1 A.L.R. 2d 870; Id., 2 Cir., 168 F.2d 387.

[2] There was one variation in application of this principle. The City had applied on July 18, 1941, for a withdrawal of $3,000,000.00 and had been allowed to withdraw $2,500,000.00. It demanded interest on the amount withdrawn from the date of taking to that of its application but that was denied on the ground that the delay in payment was caused by the City's failure to make its application immediately after the deposit was made.

received under the deficiency award from the government or only at the rate of 4% at which under state law the City was chargeable with interest on its obligations. This was decided adversely to the City and it has not appealed. The only question raised on this part of the case therefore is as to the proper amount of the government's obligation for interest to the City.

■ Although these proceedings are very complicated because of the great number of diverse interests in the property and the corresponding number of claimants to the funds deposited, the applicable law seems to be fairly well settled. The validity and effectiveness of the taking of the property is unquestioned and so is the liability of the government to pay just compensation for it. Equally unquestioned is the liability of the government to pay some deficiency interest as a part of that just compensation, previous litigation and agreement having resolved all disputes relating to that part of the just compensation which is not included in the term deficiency interest. The purpose and effect of § 258a of Title 40 U.S.C.A. in a simple case of the taking of property to which a known owner has a clear title is to give the government possession at once and to give the owner immediate payment either in full or to the extent of the estimated value deposited. If the deposit turns out to be less than the actual value the owner is given the fair equivalent of immediate payment in full by additional compensation at the rate of six per cent of the difference between the amount deposited and the actual value. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

This is in accord with decisions under the earlier procedure holding that when possession of the condemned land is taken before payment interest for the interval is a part of the just compensation. Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1.

■ Whether the situation be as simple as the one just mentioned or more or less as complex as that involved in these proceedings it is essential that the above mentioned purpose of the statute be given effect, i.e. that the government shall get immediate possession and that just compensation shall be paid. However, before this statute payment into court was treated as payment to the owner, and the value of the fee having been determined, delay in distribution resulting from valuation of subsidiary interests or disputes as to title was not charged against the government. United States v. Dunnington, 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed. 996; City of St. Paul v. Certain Lands in the City of St. Paul, 8 Cir., 48 F. 2d 805. The enactment merely provides a method for the determination and payment of just compensation for property condemned which eliminates payment of interest on such part of the value as the government does not dispute. See Albrecht v. United States, 329 U.S. 599, 605, 67 S.Ct. 606, 91 L.Ed. 532.

■ The government is not required as the result of the adoption of a new procedure to pay more than just compensation as the price of immediate possession, by analogy to the above decisions, and to the extent that it makes an unequivocal deposit of that compensation in court it has satisfied its obligation to pay for the property as of the time of taking whether the claims of ownership be clear or questioned. An absolute taking of the property designated in the declaration takes all interests and gives the government a clear title to everything as of the date of the taking, A. W. Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216; United States v. Foster, 8 Cir., 131 F.2d 3, and in so far as the government then makes payment into court of the value of the whole it satisfies its obligation to all claimants, however numerous their claims may be. It would, of course, be desirable and greatly aid the court in passing upon applications for withdrawals where there are numerous interests and disputing claimants to have the government allocate the deposit and earmark definite amounts for

designated claimants but we think this is not a condition either upon its getting possession or upon its making constructive payment to any and all owners of compensable interests in the property taken. Cf. Meadows v. United States, 4 Cir., 144 F.2d 751. Although a lump sum deposit may not give the owner of a subsidiary interest information as to just how much the government has by deposit put at his disposal he must assume that the estimated fair value of his interest is included and elect whether to leave it on deposit or take the necessary steps to withdraw it. United States v. 0.45 Acre of Land, 2 Cir., 151 F.2d 114. His is the burden to prove how much he is entitled to take down. United States v. Miller, supra.

The government may not however retain the benefit of a deposit once made if it in effect withdraws that deposit by its later action in the proceeding. If the government reduces the amount of the deposit or opposes payment on the ground that the withdrawal requested exceeds the value of the property, it becomes liable for interest on the amount by which the deposit is thus reduced. United States v. Certain Land in St. Louis, D.C., 41 F.Supp. 809, affirmed sub nom. O'Donnell v. United States, 8 Cir., 131 F.2d 882; United States v. 3.71 Acres of Land, 50 F.Supp. 110, 628. The same rule should apply in a complex proceeding where the government opposes withdrawal of compensation for an interest taken on the ground that the interest was not one the value of which was included in the estimated compensation. Moreover, while it is sometimes said that the government has no interest in the deposit after it had been made, and that is so in respect to a deposit earmarked for withdrawal by one designated, it cannot be literally true where a lump sum deposit is made before final determination of value and there are conflicting interests of competing condemnees to be resolved. Though it is the duty of the court to see to it that each claimant gets just compensation in so far as the deposit permits and that no one is overpaid, an overpayment will not relieve the government of its obligation to pay the total amount of the final award and whatever

deficiency interest may be required to complete just compensation. Thus if the deposit is wrongfully depleted by overpayment to anyone the government may not only be required to pay out more but it may lose the overpayment for it has only its right of action against the payee and the payee may be judgment proof. So the government in these proceedings was entitled to be heard in respect to the validity of the claims and the amount which any applicant was entitled to withdraw and, provided it did not dispute the right of one who could establish title to withdraw a proportionate share, it was not opposing withdrawal in the sense that it was freezing its deposit. The time thus taken was not delay in payment caused by the government but delay, caused by the multiplicity and nature of the interests for which claimants were entitled to be paid, inherent in the proceedings whereby the court was enabled to make its orders. On the other hand, whenever, if at all, the government, having this obligation in the proceedings, did contest only the amount, claimed there must have been some amount concededly withdrawable. The situation then was as it would have been had that amount been earmarked originally for that claimant. The conceded amount could have been taken down, and if in the end the claimant was awarded more, that with deficiency interest from the date of taking would have become payable.

Where, therefore, no application was made for any withdrawal, no deficiency interest is allowable. United States v. 0.45 Acre of Land, 2 Cir., 151 F. 2d 114, supra. And when application was made and withdrawal denied on the ground of a dispute as to the validity of the title asserted, no interest is allowable. But if application was made and denied, or allowed in part only, on the ground that the demand was excessive, interest is allowable on any part of the final award, in excess of any amount withdrawn or conceded by the government to be withdrawable, from the date of taking to the date of payment.

Judgment reversed and cause remanded for further proceedings in conformity to this opinion.