**UNITED STATES of America,
Plaintiff,**

v.

**355.70 ACRES OF LAND, MORE OR LESS, Situate IN the TOWNSHIPS OF ROCKAWAY AND JEFFERSON, COUNTY OF MORRIS, STATE OF NEW JERSEY, and Caleb O. Halstead, et al., Defendants.**

Civ. A. No. 546–58.

United States District Court
D. New Jersey.

Dec. 6, 1962.

David M. Satz, Jr., U. S. Atty., by James D. Butler, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Walter Goldberg, Newark, N. J., for defendants Realty Transfer Co. and Hendrik and Lathrope Voorspuy.

Schenck, Smith & King, Esquires, by Clifford W. Starrett, Morristown, N. J., for defendant Oak Ridge Lake Park Realty Corp.

AUGELLI, District Judge.

This is an action brought by the United States for the taking of land under 40 U.S.C.A. § 258a. The Declaration of Taking was filed on May 14, 1958, and on the following day, $26,675.00 was deposited in the Registry of the Court as the estimated just compensation for the land taken. On July 16, 1958, an additional $1,500.00 was deposited in the Registry for a dwelling on the property.

The Declaration of Taking described the lands taken by a metes and bounds perimeter description of the entire 355.70 acre area. There was no allocation of the boundary lines of the individual owners within the taking area, nor was there an indication of the amount of land taken from each owner.

The following parties claimed to be the owners of various portions of the condemned land: Realty Transfer Company; Hendrik and Lathrope Voorspuy; Oak Ridge Lake Park Realty Corporation; Lidgerwood Estates, Inc.; and collectively, Kenneth and Geraldine Schachter, Norman L. and Ethel Fischell, and

Alfred S. Smith. We are here concerned only with the claims made by Realty Transfer, the Voorspuys, and Oak Ridge.

On October 29, 1958, the Voorspuys filed a motion to withdraw their portion of the money deposited in the Registry. That motion was heard on November 10, 1958, but was adjourned so as to permit the parties to work out a stipulation as to interior boundary lines or some other arrangement that would permit the Voorspuys to draw out at least part of the money on deposit. At this hearing, the attorney for the Government indicated that the Voorspuys' title was not questioned, but that the titles of all other claimants were in doubt. The parties were unable to agree among themselves as to their respective interests, but no further action was taken in this case for over a year.

On February 17, 1960, Oak Ridge filed a motion to withdraw its share of the money on deposit, and on March 4, 1960, Realty Transfer filed a similar application. On March 18, 1960, the Government filed a motion asking that the claimants submit proof of title before the court on March 31, 1960. At this hearing, the United States Attorney stated that only Realty Transfer need prove title, since the Government had title insurance to cover the other claimants. Realty Transfer attempted to prove its title, but the hearing was adjourned so that the parties could try to work out a stipulation with regard to interior boundaries. On April 25, 1960, no stipulation as yet having been agreed upon, Realty Transfer resumed its proof of title before the court. Decision was reserved on this issue pending the receipt by the court of a certified chain of title to be furnished by Realty Transfer, but the record does not disclose that any such certified chain of title was ever submitted.

A stipulation signed by all the claimants was filed on November 22, 1961. This stipulation defined the interior boundary lines and the amount of land owned by each of the claimants.

A trial of the issue of just compensation as to the Voorspuys, Realty Transfer and Oak Ridge commenced on April 2, 1962, and these claimants were awarded judgments of $10,595.00, $24,412.50, and $6,020.00 respectively. The Government conceded that interest at the rate of 6% was due on $12,852.50, which represented the excess of the total amount of the awards ($41,027.50) over the deposit in the Registry ($28,175.00), from May 14, 1958 to June 14, 1962, the date the $12,852.50 was paid into court.

The Government disputes the assertions made by these claimants of their right to additional interest at the rate of 6% on the $28,175.00 in the Registry, from May 14, 1958, to the date of payment. This motion is brought to settle that dispute.

The governing statute on the question of withdrawal of funds from the Registry is 40 U.S.C.A. § 258a. That section reads, in pertinent part, as follows:

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding."

The rule with regard to the allowance of interest is also found in 40 U.S.C.A. § 258a. It reads, in part, as follows:

"* * * judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; *but interest shall not be allowed on so much thereof as shall have been paid into the court.*" (Italics added)

While no interest is permitted on the funds deposited in the Registry as a general rule, a judicial exception has grown up in the light of the statutory language with regard to applications for withdrawal. Stated simply, that exception provides that if the Government op-

poses the withdrawal by a claimant and the court declines to permit such withdrawal, interest may be allowed on the portion withheld. United States v. Certain Lands in City of St. Louis, Mo., 41 F.Supp. 809 (D.C.Mo.1941). The basis for this exception is that the deposited funds are not made available to the claimant by the United States where the latter opposes payment. But unless the claimant moves for withdrawal under 40 U.S.C.A. § 258a and that motion is denied in whole or in part, "the amount of the deposit is to be treated as at his disposal". United States v. 0.45 Acre of Land, etc., 151 F.2d 114 (2 Cir., 1945). This rule, of not allowing interest on money deposited in the Registry, in the absence of a court order denying withdrawal, has been followed even where the reason for claimants not moving for such an order, was that the United States Attorney had expressed his disapproval or objection thereto. United States v. Certain Parcels of Land, etc., 151 F.2d 116 (2 Cir., 1945). No case has come to this Court's attention in which interest has been awarded on money in the Registry without the existence of a court order denying withdrawal. For cases awarding interest, see Bishop v. United States, 288 F.2d 525 (5 Cir., 1961); United States v. Certain Lands in St. Louis, Mo., supra; United States v. 3.71 Acres of Land, etc., 50 F.Supp. 628 (E.D.N.Y.1943).

No court order denying withdrawal of Registry funds was ever made in this case. Although, as previously mentioned, the claimants filed motions for withdrawal at various times, such applications were not pursued, allegedly because of the Government's opposition to such withdrawals and its failure to allocate the interior boundary lines, on which the claimants themselves were unable to agree. In this Court's opinion, the absence of an order denying withdrawal of funds in the Registry, should be dispositive of the case.

As to the Government's failure to allocate the interior boundary lines of the condemned property, the case of United States v. 53¼ Acres of Land, 176 F.2d 255 (2 Cir., 1949), deals with an analogous situation. In that case, as in the case at bar, the claimants argued that they were prevented from withdrawing certain portions of the deposited moneys because the Government failed to allocate definite amounts for specific interests in the property taken and because the Government opposed the applications for withdrawal. The court stated that (at pages 258–259):

> " * * * in so far as the government then makes payment into court of the value of the whole it satisfies its obligation to all claimants, however numerous their claims may be. It would, of course, be desirable and greatly aid the court in passing upon applications for withdrawals where there are numerous interests and disputing claimants to have the government allocate the deposit and earmark definite amounts for designated claimants but we think this is not a condition either upon its getting possession or upon its making constructive payment to any and all owners of compensable interests in the property taken. * * * [It is the claimant's] burden to prove how much he is entitled to take down."

The quoted language would appear to be just as applicable to a case involving multiple owners of different interests in land as to one, as in the cited case, involving the different interests of lessees and sublessees. Thus, it is not incumbent on the Government to make a definite allocation among the various claimants. Nor is the Government obliged to sit idly by while the question of allocation of the funds in the Registry is being determined. As the court stated further in the above cited opinion (176 F.2d 255, 259):

> " * * * the government in these proceedings was entitled to be heard in respect to the validity of the claims and the amount which any applicant was entitled to withdraw and, provided it did not dispute the

right of one who could establish title to withdraw a proportionate share, it was not opposing withdrawal in the sense that it was freezing its deposit. The time thus taken was not delay in payment caused by the government but delay, caused by the multiplicity and nature of the interests for which claimants were entitled to be paid, inherent in the proceedings whereby the court was enabled to make its orders."

For a later opinion involving the same litigation, see United States v. City of New York, 186 F.2d 418 (2 Cir., 1951). See also United States v. 15.03 Acres of Land, etc., 253 F.2d 698 (2 Cir., 1958); United States v. 70.39 Acres of Land, 164 F.Supp. 451, 475 (S.D.Cal.1958).

For the foregoing reasons, the motion for additional interest on the funds in the Registry of the court will be denied.