See also, D.C., 241 F.Supp. 456; D.C., 241 F.Supp. 464.

**UNITED STATES of America**

**v.**

**287.89 ACRES OF LAND, MORE OR LESS, Situate IN CLEARFIELD COUNTY, COMMONWEALTH OF PENNSYLVANIA, and Howes Leather Company, Inc., et al.**

**UNITED STATES of America**

**v.**

**360.19 ACRES OF LAND, MORE OR LESS, Situate IN CLEARFIELD COUNTY, COMMONWEALTH OF PENNSYLVANIA, and J. Blair Porter et al.**

Civ. A. Nos. 62–395, 64–663.

United States District Court
W. D. Pennsylvania.

March 6, 1968.

Eugene L. Cimono, Philipsburg, Pa., Dale L. Jernberg, Glenn Dale, Md., Belin & Belin, Nevling & Davis, Bell, Silberblatt & Swoope, David S. Ammerman, Clearfield, Pa., Metz, Cook, Hanna & Kelly, Reed, Smith, Shaw & McClay, John V. Bowser, Alexander Unkovic, Gerald Ziskind, Pittsburgh, Pa., for defendants.

Gustave Diamond, U. S. Atty., George Schumacher, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

## OPINION

ROSENBERG, District Judge.

In these proceedings the United States has acquired by eminent domain some 360 acres of land in Clearfield County, Pennsylvania, for the purpose of establishing a dam and an overflow reservoir which would aid in flood control of the area. The Declaration of Taking was filed on May 29, 1962, and on that date $78,700.00 was deposited in the Register of the Court as the estimated just compensation for the land taken.

The Declaration of Taking described the land on a tract-by-tract basis according to the metes and bounds of such tracts. There were twenty-eight tracts in the overall area. The Declaration set forth the purported owners and their addresses and included the subsurface owners as to those which were known, as well as designating "Other Unknown Owners". The Declaration indicated for each tract a certain estimated compensation for the total tract. Because numerous questions were presented for the compensation of the owners, reputed owners and possible other unknown owners, as they applied to surface rights and mineral rights such as coal, clay and other mineral rights, rights of way, easements, severance rights and "values of brick refractories", a Board of Commissioners was designated pursuant to Federal Rule of Civil Procedure 71A(h) to assist in the disposition of the questions presented.

The Board of Commissioners conducted protracted and intensive hearings in which testimony was heard for a period in excess of 68 days, from August 4, 1965 to July 20, 1966. On January 16, 1967, the Commission filed its Findings of Fact, Conclusions of Law and Opinion. In its determination the Commission designated the interests of the owners, both for the surface and subsurface rights. Numerous objections were made to the report, and Chief Judge Gourley, to whom the case had been assigned, overruled all objections and accepted the report of the Commission. Thereupon the Government on September 1, 1967, filed a proposed Deficiency Judgment in the amount of $712,050.00, together with interest at the rate of 6% per annum from May 29, 1962. On September 27, 1967, an order was made directing payment of the deficiency into the Registry of the Court in the sum of $939,906.00 to fulfill the awards as made by the Commission.

Certain condemnees object to the proposed distribution in two respects: First, that the sum deposited on May 29, 1962, representing the advance estimate of value of the property taken, was not properly allocated and therefore, there can be no denial of interest upon that part of the ultimate award; and second, that the lump sum deposit made by the Government subsequent to the Commission's awards, which awards were affirmed by this Court, are likewise ineffective because there has been no specific allocation to any owner of any specific sum.

The complaining condemnees argue that the Government should have originally described the tracts in question (108, 119, 120 and 121) on a tract-by-tract basis and named the four separate surface fee owners and the two separate mineral subsurface fee owners, and as such allocated to each a distinct compensation for each fee owner of the total sum assigned to the tract, and that the failure of the Government to do so deprives them of their rights to take any part of the fund allocated for their particular tracts. Accordingly, they present the issue of whether or not the deposit so made has deprived them of

their rights to participate in the fund as their rights would have eventually appeared in the condemned land.

It took months of Commission inquiry to ascertain the various interests in and under the entire acreage. Thus it may not be asserted that the Government could have given definite descriptions of measures of ownership. The conflicting interests were only ascertainable by a judicial process and neither the claimants nor the Government could anticipate as a certainty what they would be.

The complaining condemnees rely for support of their contention on United States v. 355.70 Acres of Land, 327 F.2d 630, C.A. 3, 1964. The defendants contend that in view of this decision the Government could not lump deposits for the four different tracts and have the lump sum credited against the individual obligations as owed to the property owners of the condemned rights in the surface and subsurface. A close reading of United States v. 355.70 Acres of Land, supra, reveals that it is not dispositive of the issue of this case. There the Government used only a perimeter description in both the declaration of taking and the complaint, and no effort was made to *either* describe the land taken on a tract-by-tract basis *or* to allocate the estimated compensation among the several tracts. In fact, in such case the Government's taking embraced only part of each property and was found inadequate in that the defendants had nothing to identify the points at which the perimeter of the condemned area intersected the lateral boundaries of the various tracts. Although some of the landowners in that case attempted to withdraw their lawful shares following the deposit of estimated compensation, they failed and no distribution was made until after a full trial on the issue of compensation. Thus, because no more than a conjectural guess could be made as to what property was condemned, the Court of Appeals concluded that the unallocated sum under the particular facts of the case was not a legally effective deposit within the contemplation of the Declaration of Taking Act so as to relieve the Government of its interest obligations.

This is distinguishable from our case. Here the land to be condemned was described on a tract-by-tract basis and the deposit was so allocated. The money was on deposit, but no claim to it was made by any of the subsurface owners. Subsequent to the date of condemnation but before the Commission's award, some of the condemnees made application for and received partial distribution of the estimated compensation deposited. One condemnee, Hile, received a distribution of $5,000 on Tract 119 on July 5, 1963, and $2,500 on the same tract on August 20, 1964. No other applications for partial distribution were made by the remaining condemnees, notwithstanding the fact that estimated compensation was deposited and was available for allocation among the several claimants on a tract-by-tract basis. Since the money on deposit may be considered as tender to them, they may now not complain about their own failure to apply for it. While a futile attempt to withdraw would not be necessary, the fact that one of the condemnees applied for and received a distribution is at the very least an indication that the description of the condemned land was properly made.

█ In order to determine whether the description of the condemned land and the allocation of the deposited money is correct, it must not be forgotten that condemnation is an in rem proceeding. In each instance it is the property for which the award is fixed. The Declaration of Taking Act does not require that estimated compensation be allocated among the various claimants to an interest in a tract being condemned, but only "a statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken." Declaration of Taking Act, 40 U.S.C. § 258a; United States v. 53¼ Acres of Land, 176 F.2d 255, C.A. 2, 1949. The estimated compensation is for the "land taken" rather than for the interest of the party or parties whose

land is taken. Since there was a separate allocation of estimated compensation between the several tracts, the express language of the statute governs the awarding of any interest on the deficiency deposit, i. e., "and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court." 40 U.S.C. § 258a.

■ The condemnees' second objection to the proposed deficiency judgment is that the Government's lump sum deposit of $939,906.00, made subsequent to the Commission's award, was improper because no specific allocation between the tract owners' surface interest and the fee interests of the mineral owners was made. It would appear that, although such an allocation was not made, the Government's deposit in the registry was effective under the provisions of 40 U.S.C. § 258a.

In answer to the condemnees' first objection above, it was determined that although the Government did not allocate the original deposit in the Court Registry exactly as determined by the Court in its ultimate ruling, the money which was deposited could have been withdrawn upon proper application of the parties. Prior to the Commission's award, the disputed measures of interest in the land and the proportionate interest in the deposit were matters not between the Government and the claimants, but rather between the claimants, inter se. This dispute required evidentiary proof by the claimants before the Commission and an adjudication by the Commission because of the lack of recorded evidence upon which the Declaration of Taking could be precisely and specifically based. In any event the claimants were not estopped from applying for withdrawals, as claimant Hile did, if they had desired to do so.

■ Thus, after the Commission's award and after the final deposit of $939,906.00, when the condemnees are not in agreement as to their respective shares of the award, the Government has no real interest or even standing to participate in such a controversy. United States v. Certain Lands in the Town of Hempstead, Nassau County, New York, 129 F.2d 918, 920, C.A. 2, 1942; City of St. Paul v. Certain Lands in the City of St. Paul, Minnesota, 48 F.2d 805, 807, C.A. 8, 1931.

The argument by the claimants that the Government should not have deposited the final award in a total amount, but should have deposited it in the proponent parts equal to each of the awards as made is without substance. The amounts were ascertainable in the award on an interest-by-interest basis, and the adding of these together by the Government and placing a lump sum in deposit did not affect or confuse the individuals' detailed awards as defined in the Commission's award. The amount for each claimant was definite and specific and every claimant could withdraw the amount of the award if he sought to do so.

Research of the law does not reveal any obligation on the part of the Government to set out the specific individual awards with individual interest accruals as contended by the claimants. 40 U.S.C. § 258a. And its totaling of the individual awards into one lump sum and depositing the required interest for the total amount was in full compliance with the Government's obligations. The proprietary rights as claimed by each of the condemnees was preserved and each could have availed himself of participation in both the principal and interest.

Accordingly, the objections to the proposed deficiency judgment will be overruled, and the proposed deficiency judgment will be affirmed.